1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WYTTMAB LLC,

Plaintiff,

v.

GODADDY.COM LLC,

Defendant.

CASE NO. C20-615 MJP

ORDER ON MOTION TO
TRANSFER

This matter comes before the Court on Defendant GoDaddy.com LLC's ("GoDaddy")

Motion to Transfer, or in the Alternative to Dismiss and Strike. (Dkt. No. 14.) Having reviewed

the Motion, Plaintiff's Opposition (Dkt. No. 17), GoDaddy's reply (Dkt. No. 23), and all

supporting materials, the Court GRANTS GoDaddy's Motion.

**BACKGROUND**

Plaintiff is a limited liability company operating as a "venture studio that develops and

launches startup companies." (Complaint ¶ 7.) Plaintiff is an existing user of GoDaddy's website

hosting services as of March 2016. (Id. ¶ 27.) In August 2019, Plaintiff purchased a web domain

from GoDaddy for a commercial janitorial service company it was considering creating: legionofbroom.co. (Id.) A member of Plaintiff's LLC then visited GoDaddy's "Website Builder" to view possible website designs for the "legionofbroom.co" website. (Id. ¶ 28.)

Plaintiff's member viewed the web design options, but never decided to make a purchase or enroll in a website design plan. (Compl. ¶ 28.) Plaintiff did not choose a plan or a product tier, add a plan to the "cart" or click "Complete Purchase." (Id.)  But Plaintiff's bank account was charged the following month for a $264.24 annual subscription for a "Website and Marketing 'Premium' plan." (Id. ¶ 29.) Plaintiff's bank account was charged after the "time had passed to cancel the trial plan and receive a refund." (Id. ¶¶ 30-31.)

"Plaintiff subsequently confirmed that when a person logs on to GoDaddy's Website Builder platform using a previously registered identification, GoDaddy will create a subscription, and ultimately charge the payment information it has on file for that person once the person has named the site, chosen an "industry" for the site, and clicked on "Continue" to reach the next screen." (Compl. ¶ 32.) This allegedly happens even before the person views the available plan rates, places the item in a cart, or clicks the "Complete Purchase" button." (Id.)

GoDaddy's Motion puts at issue whether its Universal Terms of Service ("UTOS") apply to Plaintiff's claims. A GoDaddy employee declares that "[n]o customer can use GoDaddy's products or services unless and until they have affirmatively consented to the UTOS and any other applicable agreements." (Decl. of Jessica Hanyen ¶ 9 (Dkt. No. 15).) The UTOS "set[s] forth the general terms and conditions of [the customer's] use of the Site and the products and services purchased or accessed through this Site." (Def's Request for Judicial Notice Ex. A at 1 (Dkt. No. 16-1).)[1] The UTOS includes a venue provision. (Id. ¶ 22.) The venue provision

---

[1] Without objection, GoDaddy asks the Court to take judicial notice of the UTOS. The Court considers the UTOS.

1  requires "that that any controversy excluded from the dispute resolution procedure and class

2  action waiver provisions in this Section (other than an individual action filed in small claims

3  court) shall be filed only in the Superior Court of Maricopa County, Arizona, or the United

4  States District Court for the District of Arizona." (Id. ¶ 22(N).)

5          Plaintiff correctly notes that a separate "Websites + Marketing Agreement" (WMA) also

6  applies to the use of GoDaddy's Website Builder services—the service at issue in this case.

7  When an existing GoDaddy customer uses the Website Builder and wants to see a potential

8  website design, she must click a button marked "Continue" below which reads the following:

9  "By continuing, you agree your use is subject to GoDaddy universal terms of service." (Decl. of

10 Brian Howe ¶ 11 (Dkt. No. 18).) The words "terms of service" are hyperlinked, but the user is

11 not required to view the terms before proceeding. (Id. ¶¶ 11, 14) The hyperlink then takes the

12 user to the WMA. Unlike the UTOS, the WMA contains no venue provision and no class action

13 waiver. (See Ex. B to Howe Decl. (Dkt. No. 18).)

14         The WMA states that "this Agreement sets forth the terms and conditions of your use of

15 GoDaddy's Website & Marketing services . . . and represents the entire agreement between you

16 and GoDaddy concerning the subject matter hereof." (Ex. B to Howe Decl. (Dkt. No. 18 at 8).)

17 And the WMA also states in its second paragraph of the first page that it incorporates the UTOS

18 by reference and provides a hyperlink to the UTOS. The WMA also says: "Your electronic

19 acceptance of this Agreement signifies that you have read, understand, acknowledge and agree to

20 be bound by" the WMA and UTOS, among other things. (Id. at 1 (Dkt. No. 18 at 8).)

21         Plaintiff suggests that there is a conflict between the WMA and UTOS, because only the

22 UTOS contains the venue and class action waiver provisions. The WMA states that if there "is a

23 conflict between the provisions of this Agreement and the provisions of the Universal Terms of

24

Service Agreement, the provisions of this Agreement shall control." (WMA ¶ 14 (Dkt. No. 18 at 23).) Similarly, the UTOS state that if there is a conflict between the UTOS and another "Services Agreement" (such as the WMA) then "the applicable Services Agreement shall control." (UTOS at 1.)

## ANALYSIS

**A.    Legal Standard**

Under Rule 12(b)(3), a motion for improper venue premised on a forum selection clause in a contract may present facts outside the pleading. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 323-24 (9th Cir. 1996). And the court "may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998), superseded on other grounds by statute, 28 U.S.C. § 1452(b).

The Court has broad discretion to consider transfer under 28 U.S.C. § 1404(a). Under Section 1404(a), the Court generally considers:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000). A forum selection clause is considered a significant factor in this analysis. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

**B.    The Venue Provision of the UTOS Applies and Makes Transfer Appropriate**

The UTOS applies to the Plaintiff's use of the Website Builder. Plaintiff does not dispute that it accepted the UTOS when it purchased the "legionofbroom.co" web domain shortly before starting to use the Website Builder. (See Hanyen Decl. ¶ 18 (Dkt. No. 15); Howe Decl. ¶ 1 (Dkt.

ORDER ON MOTION TO TRANSFER - 4

No. 18).) The UTOS's terms are broad and encompass Plaintiff's use of the Website Builder service. The UTOS applies to the customer's "use of the Site and the products and services purchased or accessed through the Site. . . ." (Ex. A to Hanyen Decl. at 77 (Dkt. No 15-1 at 77).) As such, the UTOS applies to the conduct at issue and the venue provision is valid and enforceable against Plaintiff.

Plaintiff does not challenge that it accepted the UTOS when it purchased the web domain legionofbroom.co. Nor does it argue that the disclosures about the UTOS were hidden or that it lacked notice. Since Plaintiff has provided the Court with no facts to dispute GoDaddy's position, the Court is left with an undisputed record that Plaintiff assented to the UTOS at the time it purchased the "legionofbroom.co" web domain.

Under § 1404(a), the Court finds that transfer to the District of Arizona is proper. The Parties have focused almost exclusively on whether the UTOS applies or not. Because the Court finds the UTOS and its venue provision apply, it gives this factor "significant weight." Stewart, 487 U.S. at 29. Plaintiff has not provided any argument as to why this case should remain in this District or otherwise addressed the factors set forth in Jones, 211 F.3d at 498–99. The Court therefore finds transfer here appropriate and GRANTS GoDaddy's motion.

**C.      No Conflict Between the WMA and UTOS**

Plaintiff argues that the UTOS's venue provision is inapplicable because it conflicts with the WMA. Plaintiff construes the silence in the WMA as to venue as creating a conflict with the affirmative venue provision in the UTOS. But where one contract incorporates another, silence in one will not create a conflict with an affirmative provision in the other. See Conway Constr. Co. v. City of Puyallup, 13 Wn. App. 2d 112, 119 (2020). And where there is apparent conflict, the Court is to "harmonize clauses that seem to conflict" to give "effect to all the contract's

1   provision." Nishikawa v. U.S. Eagle High, LLC, 138 Wn. App. 841, 849 (2007). Applying these

2   principals, the Court finds that the silence in the WMA as to venue does not create a conflict

3   with the venue provisions in the UTOS. The UTOS's venue provision applies to the WMA. And

4   there is nothing in the WMA that suggests it was intended to replace or substitute the UTOS.

5   **D.      Plaintiff's Acceptance of the WMA is Irrelevant**

6          Plaintiff argues that it was not on actual or inquiry notice of the terms of the WMA when

7   it clicked "Continue" in using the Website Builder. The Court does not reach this issue, because

8   there is no dispute that Plaintiff accepted the UTOS and that the UTOS and its venue provision

9   apply to the use of the Website Builder. Whether or not Plaintiff accepted the WMA has no

10  impact on enforcement of the venue provision in the UTOS.

11                                   **CONCLUSION**

12         The Court agrees with GoDaddy that the UTOS's venue provision applies to the conduct

13  alleged in Plaintiff's complaint. Given that there is a valid venue provision, the Court gives it

14  significant weight and, in the absence of evidence or argument as to why this matter should

15  remain in this District, the Court GRANTS GoDaddy's Motion and TRANSFERS it to the

16  District of Arizona. The Court does not reach any of the alternative relief GoDaddy has sought in

17  its Motion.

18         The clerk is ordered to provide copies of this order to all counsel.

19         Dated November 24, 2020.

20

21                                          Marsha J. Pechman
                                            United States District Judge
22

23

24